COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

CORAZON LABAO FERRER, An
Heir and        )

Assignee of ARTURO LABAO,                            )             
No.  08-04-00200-CV

                                                                              )

Appellant,                          )                   Appeal from the

                                                                              )

v.                                                                           )              
215th District Court

                                                                              )

NOEMI
GUEVARA,                                            )           
of Harris County, Texas

                                                                              )

Appellee.                           )               
(TC# 2002-63463)

                                                                              )

 

 

O
P I N I O N

 

Corazon Ferrer
Labao appeals from a Judgment Notwithstanding the Verdict (AJNOV@)
in favor of Appellee Noemi Guevara. 
Appellant contends the trial court erred in granting the JNOV.  We agree and reverse and remand.

About 9 p.m. on
October 17, 2002, Pacifico Ferrer and his father-in-law, Arturo Labao, were
driving north on Highway 6 approaching the Timbercreek intersection.  Appellee was driving south on Highway 6 and
turned left onto Timbercreek.  Her car
was hit by Mr. Ferrer.   Appellee
conceded that she did not yield the right of way, but insisted she had looked
and did not see any oncoming traffic. 
Mr. Ferrer and Mr. Labao were both injured in the collision and taken to
a hospital by ambulance.








Mr. Labao had
surgery the night of the accident.  He
had to have a second surgery.  After the
second surgery, his kidney failed and he was placed on dialysis.  Mr. Labao remained in ICU for three
months.  Mr. Labao had a neck brace and
tracheostomy.  While in the hospital,
Mr. Labao was unable to communicate and cried.  Appellant testified that her father was
mostly frustrated because his daughter had to help him change his diaper.  Mr. Labao told Appellant that he was tired of
the pain and cried, AI
just want to go.@

Prior to the
accident, Mr. Labao had chronic atrial fibrillation for five to seven years and
high blood pressure.  Mr. Labao saw his
cardiologist two weeks prior to the accident, and his doctor indicated
everything was fine.  Appellant stated
that her father did not have internal bleeding, a tracheostomy tube, or kidney
failure prior to the accident.  Before
the accident, Mr. Labao ran his business, a washateria, by himself and
worked daily.  Among the services
Mr. Labao provided was a wash and fold, which consisted of weighing the
clothing, washing, drying, folding, and wrapping the clothing.  Mr. Labao also sold items in the washateria
and repaired the machines.  In his spare
time, Mr. Labao would lift weights and read history books and the dictionary so
he could challenge his grandchildren to competitions.  Mr. Labao died on May 29, 2003.








Among Mr. Labao=s medical bills entered into evidence
was a bill from the Cy-Fair Volunteer Fire Dept totaling $398.53 for ambulance
service on October 17, 2002.  The second
bill from Memorial Hermann Health Care System totaled $980,285.43 for
hospitalization from October 18, 2002 until February 4, 2003.  Another bill from Memorial Hermann Hospital
System and Continuing Care Corporation totaled $37,759.25 for services from
February 4, 2003 until February 19, 2003. 
A fourth bill from Spring Branch Medical Center totaled $88,196.09 for
services from March 6, 2003 until March 19, 2003.  The final bill from Merc Medical Supply Company
totaled $2,526.12 for supplies needed while Mr. Labao was at home and is dated
December 15, 2003.  All of the bills were
incurred after the car accident.  

At the close of
the plaintiffs= case,
Appellee moved for a directed verdict on two issued arguing:  (1) Appellant failed to prove she had
standing under the survival statute to bring the suit; and (2) Appellant failed
to offer legally or factually sufficient evidence of causation of
Mr. Labao=s past
medical treatment, expenses, and damages. 
The trial court judge denied the motion for a directed verdict.  During the charge conference, Appellee
objected to the admission of Mr. Labao=s
medical bills for lack of causation because Appellant failed to prove the
medical conditions and resulting expenses were caused by the accident.  On February 5, 2004, the jury returned a
verdict in favor of the plaintiffs.  The
jury awarded Mr. Ferrer $4,576.04 for past medical expenses, $500 for pain and
suffering, and $500 for mental anguish. 
Appellant was awarded $1,109,169.42 for her father=s medical expenses and $125,000 for her
father=s pain
and mental anguish.  Defendant filed a
motion for a JNOV on February 13, 2004 arguing Appellant did not offer
testimony or evidence, within a reasonable degree of medical probability that
the $1,109,169.42 in past medical expenses were caused by the accident.  In the motion for the JNOV, Appellee conceded
that there was evidence of pain and suffering, but argued that because the
medical conditions had not been properly linked to the accident, the judge
should also disregard the jury=s
award of $125,000 in pain and mental anguish. 
The judge upheld the jury=s
award as to Mr. Ferrer, but entered a JNOV as to Mr. Labao=s past medical expenses and pain and
mental anguish awards finding they were not supported by legally and factually
sufficient evidence.








We first address
Appellee=s
contention that Appellant did not have standing to bring suit under the
survival statute.  Specifically, she
argues that Appellant did not have standing to bring suit under the survival
statute as an assignee or as an heir.  

Standing is
implicit in the concept of subject matter jurisdiction, and therefore, it is
never presumed and cannot be waived.  Texas
Ass=n of
Business v. Tex. Air Control Bd., 852 S.W.2d 440, 443-44 (Tex. 1993).

As
an Assignee

The effective date
of an assignment is the day it is signed. 
See Luker v. Arnold, 843 S.W.2d 108, 120 (Tex.App.--Fort Worth
1992, no pet.).  In most cases, a cause
of action accrues when a wrongful act causes an injury.  Childs v. Haussecker, 974 S.W.2d 31,
36 (Tex. 1998).  At common law, an
individual=s action
for personal injuries did not survive his death.  Russell v. Ingersoll-Rand Co., 841
S.W.2d 343, 344 (Tex. 1992).  On the
premise that assignability depended on survivability, the passage of the Texas
Survivor Statute meant that personal injury claims became assignable.  PPG Industries, Inc. v. JMB/Houston Centers
Partners Ltd. Partnership, 146 S.W.3d 79, 106 (Tex. 2004).  Personal injury claims are generally
assignable.  Beech Aircraft Corp. v.
Jinkins, 739 S.W.2d 19, 22 (Tex. 1987). 
However, there are four exceptions: 
(1) legal malpractice claims cannot be assigned; (2) plaintiffs cannot
assign to the settling defendants to a lawsuit a portion of their claim against
the non-settling defendants, also known as Mary Carter agreements; (3) a
tortfeasor cannot take an assignment of a plaintiff=s
claim as part of a settlement agreement with the plaintiff and prosecute that
claim against a joint tortfeasor; and (4) interests in an estate cannot be
assigned.  State Farm Fire and Cas.
Co. v. Gandy, 925 S.W.2d 696, 707-11 (Tex. 1996).  

 








Under
the Survival Statute

A cause of action
for personal injury to the health, reputation, or person of an injured person does
not abate because of the death of the injured person or because of the death of
the person liable.  Tex.Civ.Prac.&Rem.Code Ann. ' 71.021(a)(Vernon 1997).  A personal injury action survives to and in
favor of the heirs, legal representatives, and estate of the injured
person.  Tex.Civ.Prac.&Rem.Code Ann. '
71.021(b).  The survival statute does not
create a new cause of action, it allows a cause of action to continue after the
death of the injured party.  Parrott
v. Caskey, 873 S.W.2d 142, 150 (Tex.App.--Beaumont 1994, no pet.).  When a person dies without a will, all of the
estate vests immediately in his heirs at law, subject to payment of the debts
of the estate.  Tex.Prob.Code Ann. '
37 (Vernon 2003).  Heirs can maintain a
survival suit during the four-year period for instituting administration
hearings provided by the law if the heirs can allege and prove that there is no
administration pending and none is necessary. 
Shepherd v. Ledford, 962 S.W.2d 28, 31-2 (Tex. 1998).  The heirs of the estate may decide amongst
themselves how to distribute the estate and pay for the expenses of the
estate.  Id. at 32.  

Evidence

Appellee argues
that Appellant does not have standing as an assignee under the survival
statute.  Although Appellant is not
asserting she has standing as an assignee under the survival statute, she is
asserting standing in two distinct ways. 
First, Appellant contends she has standing as an assignee of Mr. Labao=s personal injury claims.  Second, she contends she has standing as an
heir under the survival statute.  We
agree.








On April 19, 2003,
Mr. Labao assigned all right, title, and interest in his claims, causes of
action, and requests for damages, for the accident he was involved in on
October 17, 2002, to his daughter, Appellant. 
The assignment is dated April 19, 2003. 
Mr. Labao died on May 29, 2003. 
An assignment of a personal injury claim is valid unless it meets one of
the four exceptions.  See Gandy,
925 S.W.2d at 707-11.  Mr. Labao=s personal injury claim is for serious
bodily injury, physical and mental pain and anguish, and reasonable and
necessary medical expenses as a result of Appellee=s
negligence.  Because Mr. Labao=s claim is not one of the four
exceptions, the assignment of his claim to Appellant is valid.  Appellee contends that the assignment would
only give Appellant those rights that Mr. Labao had prior to his death.  We agree. 
Appellant seeks compensation for expenses related to her father=s injuries from the accident, not
wrongful death compensation or other form of compensation for expenses incurred
for or after her father=s
death.

Because the
assignment was valid, as of April 19, 2003, Appellant had all right, title, and
interest in the claim for the personal injury cause stemming from the
accident.  Mr. Labao no longer had any
interest in the claim, so when he died, the claim did not die with him as
Appellee contends, it remained with Appellant. 
Therefore, Appellant had standing to continue the suit initiated by her
father because she gained right to the cause of action prior to his death.  

Appellee further
claims that Appellant does not have standing because she did not produce
evidence at trial to prove she had standing under the survival statute.  Again, Appellant does not claim standing
under the survival statute as an assignee, she only claims standing under the
survival statute as an heir.








As Mr. Labao=s daughter, Appellant is his heir.  She is not asserting a claim as a personal
representative of the estate, as Appellee claims, rather Appellant is asserting
the claim as an heir under the survival statute.  Because she is not suing as a personal
representative, she did not need to offer proof that she was the personal
representative of her father=s
estate.  She only needed to provide proof
that she was Mr. Labao=s
heir, and she did that through a sworn affidavit, which was attached to her
response to the Appellee=s
motion to dismiss.  

In order to
maintain the personal injury suit as an heir, the suit must be maintained
during the four-year period for administration of the estate and the heirs must
plead and prove that no administration is pending or needed.  Appellant did maintain the suit during the
four-year period from the date of death for administration of the estate.  See Frazier v. Wynn, 472 S.W.2d 750,
752 (Tex. 1971).  Mr. Labao died on May
29, 2003, so the four-year period does not end until May 29, 2007.  Appellee contends Appellant is barred from
asserting a survival cause of action because the statute of limitations to
assert a personal injury claim has run. 
This suit, whether assigned or continued under the Survival Statute, was
initiated in December 2002.  Therefore,
the statute had not run when the claim was first asserted.  








Appellant plead
and proved that no administration hearing was pending or needed.  Appellant pled in her sixth amended petition
that no administration of her father=s
estate was needed or pending.  She proved
this pleading through a sworn affidavit dated December 5, 2003.  The uncontroverted affidavit is sufficient
proof that no administration was pending or needed.  Appellee contends Appellant did not indicate
the presence of a will, other heirs, a family settlement, or debt in her father=s name. 
Contrary to Appellee=s
assertion, Appellant did provide proof of all of these.  In the sworn affidavit referred to above,
Appellant indicated the only heirs were Appellant, her mother, and Appellant=s siblings.  She further indicated her father died without
a will, with no debts, and only personal effects.  The disposition of Mr. Labao=s personal effects, including clothing,
a ring, and a watch, was discussed amongst the heirs.  They decided to give the ring and some
clothes to one of the male heirs, the watch to another male heir, and the
remaining clothing to charity.  Appellant
properly pled and proved she had standing as an heir under the survival
statute.

Appellant had
standing as an assignee under the original personal injury claim initiated by
her father.  She also had standing as an
heir under the survival statute. 

Judgment
Notwithstanding the Verdict

In Appellant=s sole issue on appeal, she claims the
trial court erred in granting the JNOV.  

Standard
of Review

To affirm the
trial court=s grant
of a JNOV, the reviewing court must find that there is no evidence to support
one or more of the jury=s
findings necessary for liability.  Wal-Mart
Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003).  When reviewing a no evidence point, we view
the evidence in the light that tends to support the finding of the disputed
fact and disregard all evidence and inferences to the contrary.  Id. 
If there is more than a scintilla of evidence to support the jury=s findings, the JNOV must be overturned
and the jury=s verdict
upheld.  Id.  More than a scintilla of evidence exists if
the evidence provides some reasonable basis for reasonable minds to differ
about a fact=s
existence.  Lee Lewis Const., Inc. v.
Harrison, 70 S.W.3d 778, 782-83 (Tex. 2001).

Damages








A plaintiff must
establish two causal nexuses in order to be entitled to recovery:  (1) a causal nexus between the defendant=s conduct and the event sued upon; and
(2) a causal nexus between the event sued upon and the plaintiff=s injuries.  Morgan v. Compugraphic Corp., 675
S.W.2d 729, 731 (Tex. 1984); Walker v. Ricks, 101 S.W.3d 740, 747
(Tex.App.--Corpus Christi 2003, no pet.). 
The causal nexus between the event sued upon and the plaintiff=s injuries is referable strictly to the
damages portion of the plaintiff=s
cause of action.  Walker, 101
S.W.3d at 747.  A jury may decide the
required causal nexus between the event sued upon and the plaintiff=s injuries when:  (1) general experience and common sense will
enable a layperson fairly to determine the causal nexus; (2) expert testimony
establishes a traceable chain of causation from injuries back to the event; or (3)
a probable cause nexus is shown by expert testimony.  Weidner v. Sanchez, 14 S.W.3d 353, 370
(Tex.App.‑-Houston [14th Dist.] 2000, no pet.).  Generally, lay testimony establishing a
sequence of events which provides a strong, logically traceable connection
between the event and the condition is sufficient proof of causation.  Morgan, 675 S.W.2d at 733.

In order to
receive mental anguish damages there must be:

>[D]irect
evidence of the nature, duration, and severity of [plaintiffs=] mental anguish establishing a
substantial disruption in the plaintiff=s
daily routine,= or other
evidence of a >high
degree of mental pain and distress=
that is >more
than a mere worry, anxiety, vexation, embarrassment, or anger.= 
Compensable mental anguish includes a mental sensation of pain resulting
from >such
painful emotions as grief, severe disappointment, indignation, wounded pride,
shame, despair or public humiliation or a combination of any of these.= 
Not only must there be evidence of the existence of compensable mental
anguish, there must also be some evidence to justify the amount awarded.  . . . 
Juries cannot simply pick a number and put it in the blank.  They must find an amount that, in the
standard language of the jury charge, >would
fairly and reasonably compensate for the loss.=  [Citations omitted].

 

Wyler Indus. Works, Inc. v.
Garcia, 999 S.W.2d 494, 506-07 (Tex.App.--El Paso 1999, no pet.).








Section 18.001(b)
of the Texas Civil Practice and Remedies Code touches upon three elements of
proof:  (1) the amount of the charges;
(2) the reasonableness of the charges; and (3) the necessity of the charges.  See Tex.Civ.Prac.&Rem.Code
Ann. '
18.001(b)(Vernon 1997); Beauchamp v. Hambrick, 901 S.W.2d 747, 748
(Tex.App.‑-Eastland 1995, no pet.). 
Section 18.001(b) further provides: 
AUnless a
controverting affidavit is filed as provided by this section, an affidavit that
the amount a person charged for a service was reasonable at the time and place
that the service was provided and that the service was necessary is sufficient
evidence to support a finding of fact by judge or jury that the amount charged
was reasonable or that the service was necessary.@  Tex.Civ.Prac.&Rem.Code
Ann. '
18.001(b).  However, evidence presented
in accordance with the statute does not conclusively establish the amount of
damages nor does it establish a causal nexus between the accident and the
medical expenses.  Walker, 101
S.W.3d at 748.

Evidence

Viewing the
evidence in the light favorable to the jury=s
verdict, there is a scintilla of evidence to prove the causal nexus between the
accident and Mr. Labao=s
injuries.  There is also more than a
scintilla of evidence to prove the damages for mental pain and anguish and past
medical expenses.








The record shows
that prior to the accident, Mr. Labao was in generally good health.  Mr. Labao saw a cardiologist for an
annual checkup one week before the accident, and the doctor did not find any
problems.  Mr. Labao ran a business by
himself on a daily basis and lifted weights in his spare time.  His only medical conditions prior to the
accident were high blood pressure and chronic atrial fibrillation.  On the night of the accident, Mr. Labao had
surgery.  He did not recover well, and he
had to have a second surgery performed. 
Mr. Labao was treated for internal bleeding, kidney failure, and had a tracheostomy
tube inserted.  Mr. Labao was in and out
of the ICU for several months.  He
remained in the hospital from the night of the accident, October 17, 2002,
until February 4, 2003.  He was in a
continuing care hospital from February 4 until February 19, 2003.  He was back in the hospital from March 6 to
March 19, 2003.  Mr. Labao died on
May 29, 2003.

To properly prove
causation, Appellee argues Appellant had to produce expert testimony.  We disagree. 
As discussed above, lay testimony or expert testimony is sufficient to
prove causation.  Courts have held that
when considering the causal nexus concerning damages, lay testimony is
sufficient to prove a causal nexus, so expert testimony is not necessarily
needed.  See Morgan, 675 S.W.2d at
733.  Appellee argues that medical
records alone are insufficient as a matter of law to establish medical
causation in cases of this nature. 
Though this is true, there is more than just medical records in this
case.  There was testimony as to Mr.
Labao=s daily
activities and medical ailments prior to the accident, as well as evidence
concerning the injuries Mr. Labao=s
sustained because of the accident.  In
this case, the trial court upheld the jury=s
findings as to Appellee=s
negligence, so we need only consider the causal nexus concerning damages.

Appellant
testified that Mr. Labao did not suffer from any of his post-accident injuries
prior to the accident.  There was no
indication that Mr. Labao was in bad health, in fact, it seems the opposite was
true because he ran a business by himself on a daily basis, and he lifted
weights in his spare time.  After the
accident, Mr. Labao was immediately hospitalized and spent several months in
and out of ICU.  He received continuous
care from the night of the accident until 








mid-February 2003.  He was out of the hospital for several weeks,
but he was back in the hospital from March 6 to March 19.  The final bill presented is for home services
provided to Mr. Labao from April 5 to May 7. 
No great length of time passed between the accident and Mr. Labao=s death during which he was not in the
hospital or receiving care at home.  Mr.
Labao was only allowed to go home on the condition that his daughter purchase
equipment to properly care for him.  We
conclude the lay testimony was sufficient in this case because it established a
sequence of events which provided a strong, logically traceable connection
between the event and the condition. 
Since general experience and common sense will enable a layman to
determine, with reasonable probability, there was some evidence of the causal
relationship between the event and the condition.  See Morgan, 675 S.W.2d at 733[1].








Having determined
there is sufficient evidence for reasonable minds to differ as to the causal
nexus, we now consider the mental pain and anguish damages and past medical
expenses specifically.  There is
sufficient evidence for reasonable minds to differ as to whether or not
Appellant presented enough evidence to prove damages for mental pain and
anguish.  Appellant provided direct
evidence of the nature, duration, and severity of her father=s mental anguish.  Testimony from Appellant indicates Mr. Labao
was a relatively independent man prior to the accident.  He ran a business daily and lifted weights in
his spare time.  After the accident, Mr. Labao
was in and out of ICU for several months. 
The evidence indicates he was hospitalized from the night of the
accident until mid-February.  There is no
indication that Mr. Labao ever returned to work, in fact the evidence indicates
the opposite.  Mr. Labao suffered a
complete change in his daily routine.  He
did not run the business anymore, and he spent several months in the
hospital.  Appellant testified that Mr.
Labao had difficulty communicating, and at times Mr. Labao was unable to
communicate at all.  Appellant stated Mr.
Labao cried while he was in the hospital, and at one point he told Appellant
that he was tired of the pain and said, AI
just want to go.@  Appellant had to help her father change his
diaper.  A once independent man was
forced to receive help from his daughter. 
We find that there is enough evidence for reasonable minds to differ as
to the evidence produced to prove Mr. Labao=s
mental pain and anguish damages.  

There is also
enough evidence for reasonable minds to differ about whether or not Appellant
proved the amounts, reasonableness, and necessity of Mr. Labao=s past medical expenses.  When Appellant filed her notices of evidence,
she included the various medical bills as well as affidavits stating the
services were reasonable and necessary. 
Appellee did not produce any counter affidavits contesting the amount of
the bills, nor did she file any affidavits contesting the reasonableness and
necessity of the bills.  Therefore,
Appellant produced sufficient evidence to prove that Mr. Labao=s medical bills were reasonable and
necessary.  Appellant argues Appellee
waived any error with regard to the past medical expenses because she did
not  object and allowed the jury to see
all of Mr. Labao=s medical
bills.  We do not agree.  Appellant proved the reasonableness and
necessity of the expenses, but Appellant must also produce sufficient evidence
to prove the amount of the bills and the causal nexus between the event and Mr.
Labao=s
injuries.  By not producing counter
affidavits, Appellee waived any error as to the reasonableness and necessity of
the charges, but not as to the causal nexus between the event and the
condition.  Having determined there was
enough evidence to prove the causal nexus, the bills entered into evidence are
sufficient to prove the amount of the past medical expenses.








Viewing the
evidence in the light that favors the jury verdict, we believe that reasonable
minds could differ when deciding if there is a sequence of events that provide
a strong, logically traceable connection between the event and Mr. Labao=s injuries.  We also find that there is enough evidence
for reasonable minds to differ as to the mental pain and anguish damages and
past medical expenses.  Thus, there is
more than a scintilla of evidence to show that Mr. Labao=s
injuries were a result of the accident and the amount of damages were
proper.  Therefore, the trial court erred
in granting the JNOV.  We sustain
Appellant=s sole
issue.

We reverse the
trial court=s
judgment notwithstanding the verdict and remand the cause to the trial court to
enter judgment based on the jury=s
verdict.

 

 

December
1, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.











[1]
Appellee argues that Mr. Labao=s
age was a factor in the length of time he was in the hospital.  It is long settled that a tortfeasor takes a
plaintiff as he finds him or her.  In
re Nance, 143 S.W.3d 506, 512 (Tex.App.--Austin 2004, no pet.); Blankenship
v. Mirick, 984 S.W.2d 771, 777 (Tex.App.--Waco 1999, no pet.); Lang v.
City of Nacogdoches, 942 S.W.2d 752, 766 (Tex.App.--Tyler 1997, no
pet.).  Therefore, Mr. Labao=s age should not be considered when
determining if there was enough proof of the causal nexus between Appellee=s negligence and Mr. Labao=s condition.